UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LIZA CURRY,

                                        Plaintiff,                              Docket No.:

                    -against-
                                                                                **COMPLAINT**

NEW YORK CITY DEPARTMENT OF
EDUCATION and KYLE BRILLANTE,
individually and in his official capacity as              *Jury Trial Demanded*
principal of The Highbridge Green School,
MS 361,

                                        Defendants,
------------------------------------------------------------X

      Plaintiff, LIZA CURRY ("Plaintiff"), by and through her attorneys, the Law Office of Peter A. Romero PLLC, as and for her Complaint against Defendants NEW YORK CITY DEPARTMENT OF EDUCATION and KYLE BRILLANTE, individually and in his official capacity as principal of The Highbridge Green School, MS 361 ("Defendants"), alleges and complains as follows:

## NATURE OF THE ACTION

      1.    Plaintiff brings this action against Defendants to redress their unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act ("ADAAA") (collectively, the "ADA"), the New York State Human Rights Law, New York Executive Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin Code § 8-107 *et seq.*  Plaintiff seeks injunctive and declaratory relief, compensatory damages, liquidated damages, punitive damages, attorneys' fees, costs and other appropriate relief.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state and city law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

4.      Plaintiff timely cross-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of her disability and/or perceived disability and retaliation in violation of the ADA and NYSHRL under Charge Number: 16GB900200.

5.      On January 10, 2019, Plaintiff timely cross-filed an amended charge of discrimination with the EEOC alleging discrimination on the basis of her disability and/or perceived disability and race, for retaliation, and for subjecting her to a hostile work environment on these bases, in violation of the ADA, Title VII and NYSHRL under Charge Number: 16GB900200.

6.      The EEOC issued a notice of dismissal and Right to Sue, dated March 28, 2019. Plaintiff commenced this action within ninety days of March 28, 2019.

## THE PARTIES

7.      At all times relevant herein, Plaintiff is an adult female resident of the State of New York, County of Bronx and a qualified individual with a disability and an employee within the meaning of the ADA, Title VII, NYSHRL and NYCHRL.

8.      At all times relevant herein, Defendant the NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE") was and still is an agent or entity of the City of New York.

9.      At all times relevant herein, Defendant KYLE BRILLANTE is and was principal of The Highbridge Green School, MS 361, a school located in the State of New York, County of Bronx.

10.     At all times relevant herein, Defendants employed more than fifteen employees.

11.     All times relevant herein, Defendant DOE was an employer within the meaning of the ADA, Title VII, NYSHRL and NYCHRL.

12.     All times relevant herein, Defendant Brillante was subject to the NYCHRL both individually and in his official capacity as principal of The Highbridge Green School, MS 361.

**FACTUAL ALLEGATIONS**

13.     Plaintiff is an African-American female diagnosed with thyroid cancer, aerovenous malformation, anxiety, depression and attention-deficit hyperactivity disorder, each condition constituting a qualifying disability under the ADA, NYSHRL and NYCHRL.

14.     Plaintiff commenced her employment with the DEP in or about September 2009 as a teacher.  Since in or about September 2016 through the present, Plaintiff has been employed by the DEP as an Assistant Principal.

15.     Throughout her employment, Plaintiff was qualified for her position and satisfactorily performed the job duties of her position and has been, and remains capable of, performing the duties of her position with or without an accommodation.

16.     Since in or about September 2016, Plaintiff has been employed as an Assistant Principal at The Highbridge Green School, District 9, MS 361, located at 200 West 167th Street, Bronx, New York 10452.

17.     Beginning by at least in or about December 2017 through the present, the DEP and Brillante, her assigned Principal and who is a non-disabled Caucasian male, have engaged in

ongoing acts of harassment and discrimination on the basis of Plaintiff's disabilities and/or perceived disabilities and race and subsequently retaliation for engaging in multiple acts of protected activity, creating an unlawful hostile work environment, under the ADA, Title VII, NYSHRL, and NYCHRL.

18.     Specifically, in or about September 2012, Brillante commenced his employment with Defendants as principal of The Highbridge Green School and has been Plaintiff's direct supervisor since in or about September 2016.

19.     Since in or about December 2017 through the present, Brillante has discriminatorily targeted and harassed Plaintiff, subjecting her to increased criticism, heightened scrutiny of her performance, insult, ridicule, humiliation and false allegations of misconduct on the basis of her disabilities and/or perceived disabilities and race.  No other Assistant Principal or senior staff members, including Anna Waters, another Assistant Principal in the same school who is Caucasian, does not suffer from any disabilities and who has not engaged in protected activity, have been treated in a similar manner by Brillante.

20.     Throughout her employment, Plaintiff has suffered from a medical condition known as aerovenous malformation, which constitutes a disability.  This condition causes severe pain in Plaintiff's shoulder and arm, limits her range of motion, and causes her to suffer pain while typing at a computer, slowing the speed at which Plaintiff is able to type emails and engage in word processing.  Plaintiff informed Brillante that she suffered from this condition soon after her hire.

21.     Since in or about December 2017, Brillante has engaged and continues to engage in ongoing discrimination and harassment relating to this medical condition.  Throughout this time, Brillante has and continues to frequently criticize Plaintiff for taking longer to respond to emails

and to complete word processing tasks, even though she has repeatedly informed Brillante that she suffers from a disability, aerovenous malformation, that causes her pain while typing at a computer and limits her shoulder movement when inflamed.

22.     In or about 2015, Plaintiff suffered from and was treated for thyroid cancer.  Since in or about 2016, Defendants have been aware of Plaintiff's thyroid cancer diagnosis, a medical condition constituting a disability, as she has consistently informed Brillante of her need to appear for treatment and medical appointments to ensure her cancer remains in remission.  Nonetheless, Brillante has criticized Plaintiff for missing work relating to this disability.

23.     In or about December 2017, Defendants discriminatorily removed several of Plaintiff's job duties that she previously performed, including her responsibility for 8th grade discipline, responsibility for 8th grade lunch duty and dismissal, responsibility for teacher's assistants, check-ins and support, and teacher team oversight.  These duties were reassigned to Caucasian, non-disabled employees.  Such treatment is a substantial and public diminution of the prestige of Plaintiff's position intended to embarrass and humiliate her.

24.     Beginning in or about March or April 2018 through the filing of this Complaint, Plaintiff made more than one dozen complaints to her union, Council of School Administrators and Supervisors ("CSA"), regarding Brillante's numerous, ongoing acts of discrimination and harassment.  However, as of this filing, no remedial action has been taken by Defendants to remedy Brillante's conduct.

25.     On or about March 26, 2018, Brillante and Plaintiff engaged in a meeting whereby Plaintiff objected to his conduct.  However, Brilliante brazenly informed her that she simply had to learn to deal with his "biases" as he did not intend to change his behavior.  In that meeting,

Brillante also admitted that his actions were meant to convince Plaintiff to quit.  True to form, Brillante's harassment and discriminatory conduct continued unabated.

26.     On or about March 28, 2018, Plaintiff requested personal time off from work for a job interview, a position she sought to escape Brillante's barrage of harassment.  On or about that same day, during a meeting with Brilliante, Plaintiff asserted that she believed his poor treatment of her was discriminatorily motivated by her race and gender.  Despite this, Brillante still refused to permit Plaintiff time off work without explanation for his denial, despite Plaintiff having available paid time off days.

27.     On or about May 4, 2018, Plaintiff filed a formal complaint with the Office of Equal Opportunity regarding Brillante's past and ongoing acts of discrimination and harassment. Following her complaints in or about March and May 2018, Brillante's conduct worsened, whereby Brillante subjected and continues to subject Plaintiff to increased criticism, more severe harassment, more arduous scrutiny of her performance, insult, ridicule and humiliation as ongoing discrimination and in retaliation for her complaints.

28.     In or about June 2018, Plaintiff complained to Leticia Rodriguez-Rosario, Superintendent about Brillante's past and ongoing harassment and misrepresentations and inaccuracies regarding her job evaluations, to no avail.

29.     Also in or about June 2018, Brillante subsequently informed Plaintiff, via a CSA staff support intervenor, that Plaintiff had to agree to resign from Highbridge Green School or he would subject her to discipline in the form of a poor employment evaluation.

30.     Later, in or about July 2018, Makelele conducted a meeting with Plaintiff regarding her OEO complaint asserting claims of harassment and discrimination.  Makelele thereafter

discussed Plaintiff's OEO complaint with Brillante.   However, Brillante's harassment and discriminatory and retaliatory conduct again continued unabated.

31.     Subsequently, on July 16, 2018, Plaintiff complained to Makelele that she believed the OEO investigation had been unsuccessful and further remedial action was required with respect to Brillante's conduct.   Plaintiff also requested a meeting with Rodriguez-Rosario to remedy Brillante's conduct and to request a transfer from Highbridge Green School to another school to separate herself from Brilliante's discriminatory conduct.

32.     Sadly, it became quickly apparent that Brillante's acts of harassment, discrimination and retaliation would only intensify during the 2018-2019 school year.   Prior to commencing the school year, in or about August 2018, Brillante informed Plaintiff that she would be responsible for numerous additional tasks and programs during the 2018-2019 school year, in addition to her regular duties as a coordinator, head of the arts program, and head of the special education department.   Beginning on or about August 28, 2018, Brillante required and continues to require Plaintiff to also be responsible for, *inter alia*, safety coordinator duties, parent coordinator duties, testing coordination, tracking student attendance, Morning Duty/Intervention duties, tracking parents who appear for parent-teacher conferences and coordinating high school process, a function regularly handled by guidance counselors, secretaries and aides.   These added duties, in addition to Plaintiff's prior functions, increased her workload to nearly three times that of prior years and other Assistant Principals.   Moreover, no other Assistant Principals, including Waters, were required to handle this level of work or perform guidance counselor duties.

33.     On or about August 27, 2018, Plaintiff suffered a panic attack during her commute to work, causing her to be tardy.   Plaintiff experienced this panic attack after being struck with a bout of anxiety and memories of Brillante's past and ongoing acts of unlawful harassment,

discrimination, and retaliation, raising fears of what additional behavior Brillante intended to subject Plaintiff to during the commencing 2018-2019 school year.

34.     Later that day, during an August 27, 2018 meeting with Brillante, rather than showing remorse for his ongoing unlawful conduct, Brillante instead openly continued to engage in acts of harassment, discrimination and retaliation.  For example, Brillante informed Plaintiff that she would be assigned to a desk in the main office with the school's aides and secretaries, outside Brillante's office, rather than to a private office.  In response, Plaintiff requested that Brillante provide her with a desk in an office somewhere in the school.  Brillante resolutely denied this request.  In a blatant act of retaliation, Brillante instead falsely declared - - without any explanation - - that he believed Plaintiff was a "danger" to students and referred her for a medical evaluation to assess her fitness for duty.

35.     On or about August 28, 2018, Plaintiff reported to work to begin the new school year.  Upon reporting to work, Plaintiff learned that Brillante had indeed given her private office to other employees.  Moreover, consistent with his refusal the day prior, Brillante assigned Plaintiff a desk in the main office directly outside of his office, whereby he could constantly monitor and engage in heightened scrutiny of her performance.  To her knowledge, Plaintiff is the only assistant principal without an office or subjected to the same heightened level of scrutiny.  Such treatment is a substantial and public diminution of the prestige of her position intended to embarrass and humiliate her.  Notably, Waters, another Assistant Principal in the same school, continues to have a desk in an office and is not subjected to heightened scrutiny.

36.     On or about August 28, 2018, August 29, 2018 and August 30, 2018, Brillante issued Plaintiff three letters indicating that she was being summoned to a meeting to discuss "timekeeping" concerns and informed her that the meeting "may lead to disciplinary action."

37.     On August 30, 2018, Plaintiff complained to Makelele that Brillante's harassment, discrimination and retaliation was continuing, to no avail.

38.     Throughout August, September and November 2018, Brillante has unexpectedly attended and continues to attend Plaintiff's routine meetings with co-workers and subordinate employees that he never attended in prior school years, merely to create unnecessary pressure and subject Plaintiff to additional scrutiny.  No other Assistant Principals, including Waters, have been subjected to similar levels of scrutiny.

39.     During this same time period, Plaintiff has been required to attend weekly meetings with Waters, a co-worker in the same position, without explanation, in yet another attempt to further scrutinize her work.  To her knowledge, no other Assistant Principals or senior staff are supervised by other Assistant Principals or other employees of equal status.

40.     On or about September 4, 2018, Plaintiff informed Brillante that she suffered from anxiety, a qualifying disability, and that all of her absences and nearly all of her instances of tardiness stemmed from her anxiety, resulting panic attacks, or other known medical conditions. Rather than seek to accommodate Plaintiff's medical condition or engage in an interactive process, Brillante dismissively and disingenuously said, in sum and substance, "I'm sorry you're not well." Insultingly, armed with this knowledge, Brillante targeted this disability by promptly amending his referral for a medical evaluation of Plaintiff to include an evaluation of this newly revealed disability.

41.     Subsequently, on September 12, 2018, Defendants issued Plaintiff a write up inaccurately identifying absences on ten occasions and tardiness on eight occasions.  Defendants issued this write up despite being fully aware that these absences stemmed from Plaintiff's disabilities as she had indicated this fact to Brillante during her September 4, 2018 meeting.

Moreover, Plaintiff provided medical notes for all but one absence and for the majority of her incidents of tardiness.  Conspicuously, all of these absences and all but one incident of tardiness occurred during the prior school year and for which Defendants never previously disciplined Plaintiff.

42.     Moreover, that same write up criticized Plaintiff for "speaking extremely slowly" and purportedly "crying frequently," behaviors that stemmed from Plaintiff's disabilities. However, Plaintiff has never cried publicly while at work.  Finally, that same write up falsely criticized Plaintiff for "taking a variety of pills from a pillbox during public meetings."  While Plaintiff has taken certain prescribed medications privately during the course of her employment, she has never done so publicly and such medications are taken solely to treat her disabilities.  Thus, the September 12, 2018 write up had no purpose beyond harassing and punishing Plaintiff for her disabilities and for repeatedly engaging in prior protected activity.

43.     Additionally, on September 12, 2018, Plaintiff was required to undergo a medical examination by Defendants' Medical Investigator, Dr. Anne Garner, to determine Plaintiff's fitness to work in her position.  Appallingly, prior to leaving work for this appointment, Brillante criticized Plaintiff for her need to leave work for this medical evaluation and claimed her rationale for leaving was false, even though Plaintiff's need to attend the medical evaluation was ordered by him, based on his false allegations.  Moreover, during this discussion, Brillante required Plaintiff to publicly discuss her anxiety disorder and impending medical evaluation in front of colleagues, thereby embarrassing and humiliating her.

44.     Thereafter, later that day, Plaintiff appeared for the medical examination before Dr. Garner.  Far from conducting an independent medical evaluation, the medical investigator's conduct made instantly clear that the evaluation served only to subject Plaintiff to unwarranted

discipline.  For instance, Dr. Garner was critical of Plaintiff's speech pattern, a symptom of her medical conditions, which Dr. Garner deemed to be "a little slow."  Dr. Garner then baselessly and falsely accused Plaintiff of taking opioids.  Perplexingly, despite numerous medical conditions and submission of medical notes and documentation, Dr. Garner purported to assert that Plaintiff's absences and lateness were "not medically justified."

45.     Ultimately, Dr. Garner stated in that evaluation that she would only certify Plaintiff as fit for duty if she promised not to take any more days off work.  Dr. Garner also informed Plaintiff that she would be penalized for any further absences.  Thus, rather than perform a true examination, Defendants, through its medical investigator, sought to prevent Plaintiff from taking medically necessary absences caused by her disabilities.  Moreover, Dr. Garner determined that Plaintiff would be deemed unfit to perform her duties until she submitted additional medical documentation justifying her absences, which Plaintiff subsequently provided.

46.     Following such a traumatic day, on September 12, 2018, Plaintiff complained to Ms. Rodriguez-Rosario, Superintendent, and Frank Patterson, Bronx Field Director for CSA, about Brillante's ongoing harassment, discrimination, and humiliating conduct with respect to her mental disability.

47.     On September 12, 2018, Plaintiff also commenced a medical leave, a form of protected activity, for "restoration of health" to treat the stress, anxiety, panic disorder and depression caused by Defendants' conduct.  In or about this same time, Plaintiff's physician prescribed medication to treat her anxiety and depression due to Defendants' past and ongoing harassment, discrimination and retaliation.

48.     Ludicrously, Plaintiff subsequently learned that Brillante failed to approve her request for medical leave.  Instead, Brillante initially attempted to mark Plaintiff's first absence during her medical leave as a "no call, no show" absence.

49.     On or about September 21, 2018, Plaintiff filed a Complaint with the New York State Division of Human Rights, Case No.: 10197388, with respect to Defendants' unlawful harassment and discriminatory conduct.  That Complaint was cross-filed with the United States Equal Employment Opportunity Commission, Charge No.: 16GB900200.

50.     On or about September 26, 2018, while on medical leave, Brillante sent Plaintiff a write up by certified mail disciplining her for an absence on June 27, 2018, despite having been informed that the absence was to attend a medical appointment.

51.     In or about October 2018, Defendants again informed Plaintiff that she would be penalized for any further absences, despite their knowledge that Plaintiff's absences were caused by her disabilities.

52.     On or about November 5, 2018, Plaintiff returned to work after her medical leave. Upon her return, Brillante continued his ongoing unlawful harassment, discrimination and retaliation by again subjecting and continuing to subject Plaintiff to increased criticism, heightened scrutiny of her performance, insult, ridicule, humiliation and false allegations of misconduct.

53.     Plaintiff previously participated in weekly leadership meetings that are central to the duties of senior administration employees, including her own duties.  However, since returning from her medical leave, Plaintiff has been excluded from these weekly meetings.  Indeed, since returning from her medical leave, Plaintiff has been invited to participate only on a monthly, not weekly, basis, thereby excluding Plaintiff from the vast majority of these leadership meetings.

54.     In contrast, Assistant Principal Waters continues to be invited to and participates in the weekly leadership meetings.  Thus, Defendants have substantially diminished Plaintiff's duties, excluding her from critical meetings necessary to succeed and grow in her position.  Such treatment is also a substantial and public diminution of the prestige of Plaintiff's position intended to embarrass and humiliate her.

55.     Moreover, Brillante has utilized other employees and subordinates to further harass, intimidate, discriminate and retaliate against Plaintiff.  For example, since at least November 2018, a co-worker, Valerie Diaz, principal's secretary, began tracking the times that Plaintiff came to work and left work.  On November 8, 2018, soon after Plaintiff's return from leave, Ms. Diaz admitted that Brillante instructed her to, in sum and substance, "log when [Plaintiff] come[s] in and out" of the building.  Plaintiff grieved this conduct to her union.

56.     On December 4, 2018, Plaintiff appeared for a hearing relating to her notice of harassment filed against Brillante.  During that hearing, Plaintiff again complained about Brillante's past and ongoing harassment, discrimination and retaliation, his referral of her for a medical examination upon on a false premise that she was a "danger" to students, and detailed her numerous disabilities.  Notwithstanding, the hearing administrator said he would not address Plaintiff's allegations of past and ongoing harassment, discrimination and retaliation by Brillante.

57.     On or about December 5, 2018, Brillante inexplicably again assigned Plaintiff additional job duties not previously performed by her, including, *inter alia*, verifying that all teachers in the school entered a certain minimum amount of student assessments, a task formerly shared by senior staff at the school, tracking student data to assess the effectiveness of the specially designed instruction initiative, and completing data assessment of students' lateness to school.

58.     Additionally, the school hosts a webpage for The Highbridge Green School, which contains biographies of Brillante and Assistant Principal Waters.  These biographies tout Brillante's and Water's substantial credentials and achievements.  As of this filing, Defendants have not posted a biography for Plaintiff.  Moreover, DEP documents often identify the school's administrators as Brillante and Waters, purposefully omitting Plaintiff, who holds the same position as Waters.  These omissions constitute yet another act against Plaintiff designed to cause humiliation, embarrassment and a reduction in her professional prestige that other Assistant Principals, like Waters, do not suffer.

59.     On December 10, 2018, Plaintiff filed a Notice of Claim, Claim Number 18LE034686, regarding Defendants' unlawful conduct, discussed above.

60.     Thereafter, on December 13, 2018, Plaintiff provided a copy of the Notice of Claim to Brilliante by email, thereby again engaging in protected activity regarding the unlawful harassment and discrimination perpetrated against Plaintiff by Defendants.

61.     After filing her Notice of Claim, Brilliante has since ostracized Plaintiff by excluding her from certain interactions.  For example, since filing her Notice of Claim, Brilliante seeks to avoid discussions or interaction with her.  In contrast, Brilliante continues to engage in discussions with and interact with Waters frequently.  Thus, Defendants have excluded Plaintiff from daily interactions necessary to succeed and grow in her position, in retaliation for filing her Notice of Claim.  Such treatment is also a substantial and public diminution of the prestige of Plaintiff's position intended to embarrass and humiliate her.

62.     On January 3, 2019, Brilliante summoned Plaintiff to a meeting wherein he again criticized several instances of alleged lateness by Plaintiff, despite being aware the challenged absences stemmed from her disabilities.  Additionally, some of the alleged instances of lateness

were simply false as Plaintiff was on the school's premises performing certain duties away from her desk during the times that she was purportedly late.  Brilliante indicated that he may yet bring formal discipline against Plaintiff regarding these absences and anticipated conducting another disciplinary meeting with her regarding the absences.

63.     During the meeting, Plaintiff again opposed Brillante's conduct, asserting that she believed his conduct was discriminatory as he was aware that Plaintiff's absences related to her medical conditions.  Moreover, Brillante's conduct constitutes clear retaliation, occurring just three weeks after Plaintiff opposed his conduct by filing the original Notice of Claim and providing him with a copy of the Notice of Claim.

64.     Beginning on or about November 5, 2018, following Plaintiff's return from medical leave, Brilliante changed her start time from 7:45 a.m. to 7:30 a.m. without explanation.  No other Assistant Principals or senior level employees are required to start work at 7:30 a.m.  During the January 3, 2019 meeting, Plaintiff requested that her start time be changed back to 7:45 a.m. as an accommodation for her mental health condition, a disability.  On or about January 16, 2019, Brilliante denied this requested accommodation.

65.     In or about Fall 2018, Plaintiff reviewed her personnel file in full.  However, in or about January 2019, Plaintiff again reviewed her personnel file and discovered Defendants had inserted two letters to file, dated May 16, 2018 and September 25, 2018, which did not exist during her Fall 2018 review.  The May 16, 2018 letter to file again criticized Plaintiff for, among other items, certain alleged absences and instances of lateness that related to her disabilities.  Thus, Defendants have inserted, as acts of discrimination, harassment and retaliation, a disciplinary letter to file which was never provided to Plaintiff and is not contemporaneous, as it was apparently inserted into her file months after it was allegedly created.  Notably, the purported letters are not

signed by Plaintiff, further supporting the conclusion that they are fabricated documents.   On January 14, 2019, Plaintiff filed a grievance challenging these letters to file.

66.     On January 10, 2019, Plaintiff filed an Amended Notice of Claim alleging discrimination based on her disability and/or perceived disability and race, for retaliation, and for subjecting her to a hostile work environment on these bases, in violation of the NYSHRL and NYCHRL.

67.     On January 15, 2019, Brilliante provided Plaintiff with a letter criticizing her for attendance issues, despite his knowledge that her absences stemmed from her disabilities.

68.     By in or about January 2019, Brillante's ongoing and consistent discrimination, harassment and retaliatory conduct, including increased scrutiny of her performance, ongoing false criticisms of her performance, denial of her requested accommodation, and criticizing her performance in front of her co-workers, which were acts intended to exacerbate Plaintiff's disabilities, were causing Plaintiff to suffer frequent panic attacks.   On certain days, Plaintiff suffered more than one panic attack per day due to this conduct.

69.     On or about January 17, 2019, as a result of Brillante's conduct causing her panic attacks, Plaintiff commenced a medical leave, pursuant to her physician's direction, to treat her disabilities.

70.     While on leave, Plaintiff has engaged in periodic treatment sessions and daily check-ins with her therapist, multiple counseling sessions per week with a Clinical Social Worker, periodic treatment sessions with her physician, and has undergone medication management treatment sessions.

71.     On January 23, 2019, Plaintiff made a request for several reasonable accommodations, including a transfer to another school to separate her from Brilliante and his

conduct that intentionally exacerbated her disabilities, to be permitted time off work for periodic appointments to treat her disabilities, or, if these accommodations could not be provided, that she be permitted to take a medical sabbatical.  On or about January 28, 2019, Defendants denied this request.

72.    On January 29, 2019, Plaintiff provided an update to Defendants that her physician had not yet cleared her to return to work.

73.    On January 31, 2019, despite being on medical leave, Brilliante issued Plaintiff a notice to appear for a disciplinary conference regarding her leave-related absences.  However, Brilliante was well-aware Plaintiff's absences stemmed from a medical leave to treat her disabilities.

74.    On February 4, 2019, Plaintiff submitted an additional medical note substantiating her need for medical leave.  This documentation also noted that Brillante's continuing conduct exacerbated Plaintiff's disabilities.

75.    On February 7, 2019, Plaintiff filed another request for leave relating to her disabilities, which required signatures from Brillante and the superintendent of her school district.

76.    On February 11, 2019, despite being on leave, Brillante sent another disciplinary letter to Plaintiff criticizing her leave-related absences, informing Plaintiff that he was deeming her absences unauthorized, depriving her of her pay, and threatening her with termination due to her leave-related absences.

77.    On February 12, 2019, Plaintiff re-filed her February 7, 2019 request for leave by electronic mail with the school district.

78.     On February 14, 2019, Brilliante sent Plaintiff another disciplinary letter criticizing her performance, which includes false and misconstrued allegations.  This letter also criticizes her for failing to complete certain duties by January 18, 2019, a date when she was on medical leave.

79.     On February 27, 2019, Plaintiff filed a grievance detailing Defendants' acts of discrimination based on her disabilities, retaliation, and for subjecting her to a hostile work environment on those bases.

80.     Between February 7, 2019 and mid-March 2019, Plaintiff frequently contacted Defendants requesting the necessary signatures for her February 7, 2019 leave request. Nonetheless, Defendants simply ignored her requests.  As a result, on March 19, 2019, her February 7, 2019 leave request was denied due to Brillante's failure to sign the necessary approval paperwork.

81.     On March 20, 2019, Brilliante sent Plaintiff a letter demanding her immediate return to work because her request for leave was denied.  Brilliante sent this letter despite the fact that Plaintiff's leave was denied due to his failure to sign the necessary approval paperwork, not due to her lack of a disability.

82.     On or about April 8, 2019, Plaintiff submitted additional medical documentation substantiating her need for leave relating to her disabilities.  This documentation also noted that Brillante's continuing conduct exacerbated Plaintiff's disabilities.

83.     On April 11, 2019, Plaintiff submitted an additional request for leave relating to her disabilities.  This subsequent request was necessary because of Brillante's decision to ignore her prior requests to sign the necessary approval paperwork for her original leave request on February 7, 2019.

84.     Following her April 11, 2019 request, Plaintiff repeatedly contacted Defendants to request that Brilliante and her superintendent provide the required signatures for her renewed leave request.  As of this filing, Brilliante and her superintendent have not signed the necessary approval paperwork.

85.     Defendants multiple disciplinary acts punishing Plaintiff for her disability-related leave while on leave, as well as Plaintiff's need to engage in repetitive efforts and interactions with Defendants to seek their cooperation with her requests for leave, have exacerbated and worsened Plaintiff's disabilities.  Moreover, Defendants conduct has interfered with her ability to undergo effective treatment of her disabilities.

86.     Throughout her leave, Defendants have improperly marked her disability-related absence as unauthorized and, therefore, such absences have been unpaid, denying Plaintiff compensation during her medical leave.

87.     Nonetheless, Plaintiff remains able to perform the duties of her position with reasonable accommodation.

88.     Throughout her employment, Defendants have never initiated or meaningfully engaged in any form of interactive process in an attempt to accommodate Plaintiff's several qualifying disabilities, even though Plaintiff has repeatedly informed Defendants of her medical conditions and their impact upon her job duties.

89.     Accordingly, Defendants have engaged in and continue to engage in ongoing acts of harassment and discrimination based on Plaintiff's disabilities and/or perceived disabilities and race, and retaliation for engaging in repeated forms of protected activity, constituting an unlawful hostile work environment on these bases, that is offensive and unwelcome to Plaintiff, in violation of the ADA, Title VII and NYSHRL.

90.     Moreover, Plaintiff has been treated less well than those outside of her protected classes, in violation of the NYCHRL.

## FIRST CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII)

91.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

92.     Based on the foregoing, Defendant DOE retaliated against Plaintiff because of her protected activity, in violation of Title VII.

93.     As a proximate result of Defendant DOE's retaliation, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

## SECOND CLAIM FOR RELIEF
### (Discrimination in Violation of the ADA)

94.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

95.     Based on the foregoing, Defendant DOE discriminated against Plaintiff in the terms and conditions of her employment because of Plaintiff's disability and/or perceived disability, in violation of the ADA.

96.     As a proximate result of Defendant DOE's discrimination, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

### THIRD CLAIM FOR RELIEF
#### (Hostile Work Environment in Violation of the ADA)

97.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

98.     Based on the foregoing, Defendant DOE discriminated against Plaintiff on the basis of her disability and/or perceived disability, in violation of ADA, by subjecting her to a hostile work environment that was severe or pervasive.

99.     Defendant DOE has discriminated against Plaintiff on the basis of her disability and/or perceived disability, in violation of ADA, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on her disability and/or perceived disability.

100.     As a proximate result of Defendant DOE's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

### FOURTH CLAIM FOR RELIEF
#### (Failure to Accommodate in Violation of the ADA)

101.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

102.     Defendant DOE was aware of Plaintiff's disability and need for reasonable accommodation.

103.     Defendant DOE failed to make reasonable accommodation for Plaintiff's disability.

104.     Based on the foregoing, Defendant DOE discriminated against Plaintiff in the terms and conditions of her employment because of Plaintiff's disability and/or perceived disability, in violation of the ADA.

105.     As a proximate result of Defendant DOE's discrimination, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

<strong><u>FIFTH CLAIM FOR RELIEF</u></strong><br><strong>(Retaliation in Violation of the ADA)</strong>

106.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

107.     Based on the foregoing, Defendant DOE retaliated against Plaintiff because of her protected activity, in violation of the ADA.

108.     As a proximate result of Defendant DOE's retaliation, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

<strong><u>SIXTH CLAIM FOR RELIEF</u></strong><br><strong>(Discrimination in Violation of NYSHRL)</strong>

109.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

110.     Based on the foregoing, Defendant DOE discriminated against Plaintiff in the terms and conditions of his employment because of Plaintiff's disability and/or perceived disability, in violation of the NYSHRL.

111.    As a proximate result of Defendant DOE's discrimination, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, costs and interest as permitted by law.

## SEVENTH CLAIM FOR RELIEF
### (Hostile Work Environment in Violation of the NYSHRL)

112.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

113.    Based on the foregoing, Defendant DOE discriminated against Plaintiff on the basis of her disability and/or perceived disability, in violation of NYSHRL, by subjecting her to a hostile work environment that was severe or pervasive.

114.    Defendant DOE has discriminated against Plaintiff on the basis of her disability and/or perceived disability, in violation of NYSHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on her disability and/or perceived disability.

115.    As a proximate result of Defendant DOE's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, costs and interest as permitted by law.

## EIGHTH CLAIM FOR RELIEF
### (Failure to Accommodate in Violation of NYSHRL)

116.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

117.    Defendant DOE was aware of Plaintiff's disability and need for reasonable accommodation.

118.    Defendant DOE failed to make reasonable accommodation for Plaintiff's disability.

119.    Based on the foregoing, Defendant DOE discriminated against Plaintiff in the terms and conditions of her employment because of Plaintiff's disability and/or perceived disability, in violation of the NYSHRL.

120.    As a proximate result of Defendant DOE's discrimination, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, costs and interest as permitted by law.

## NINTH CLAIM FOR RELIEF
### (Retaliation in Violation of NYSHRL)

121.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

122.    Based on the foregoing, Defendant DOE retaliated against Plaintiff because of her protected activity, in violation of the NYSHRL.

123.    As a proximate result of Defendant DOE's retaliation, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, costs and interest as permitted by law.

## TENTH CLAIM FOR RELIEF
### (Discrimination in Violation of NYCHRL)

124.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

125.    Based on the foregoing, Defendants DOE and Brillante discriminated against Plaintiff in the terms, conditions and privileges of employment on the basis of her disability, actual or perceived, and/or history of or record thereof, in violation of the NYCHRL.

126.    As a proximate result of Defendant DOE's and Brillante's discrimination, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

127.    Defendant Brillante, in his individual capacity, discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages as against Defendant Brillante, in his individual capacity, under the NYCHRL.

### ELEVENTH CLAIM FOR RELIEF
**(Failure to Accommodate in Violation of NYCHRL)**

128.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

129.    Defendants DOE and Brillante were aware of Plaintiff's disability and need for reasonable accommodation.

130.    Defendants DOE and Brillante failed to make reasonable accommodation for Plaintiff's disability.

131.    Based on the foregoing, Defendants DOE and Brillante discriminated against Plaintiff in the terms and conditions of her employment because of Plaintiff's disability, in violation of the NYCHRL.

132.    As a proximate result of Defendants DOE's and Brillante's discrimination, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related

benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

133.    Defendant Brillante, in his individual capacity, discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages as against Defendant Brillante, in his individual capacity, under the NYCHRL.

**TWELFTH CLAIM FOR RELIEF**
**(Hostile Work Environment in Violation of the NYCHRL)**

134.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

135.    Based on the foregoing, Defendant DOE and Brillante discriminated against Plaintiff on the basis of her disability, actual or perceived, and/or history of or record thereof, in violation of NYCHRL, by subjecting her to a hostile work environment by treating her less well on the basis for her disability, actual or perceived, and/or history of or record thereof, in violation of the NYCHRL.

136.    Defendant DOE and Brilliante discriminated against Plaintiff on the basis of her disability, actual or perceived, and/or history of or record thereof, in violation of NYCHRL, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, treating her less well on the basis for her disability, actual or perceived, and/or history of or record thereof, in violation of the NYCHRL.

137.    As a proximate result of Defendant DOE's and Brillante's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment,

humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

138.    Defendant Brillante, in his individual capacity, discriminated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages as against Defendant Brillante, in his individual capacity, under the NYCHRL.

### THIRTEENTH CLAIM FOR RELIEF
#### (Retaliation in Violation of NYCHRL)

139.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

140.    Based on the foregoing, Defendant DOE and Brillante retaliated against Plaintiff because of her protected activity, in violation of the NYCHRL.

141.    As a proximate result of Defendant DOE's and Brillante's retaliation, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to her professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

142.    Defendant Brillante, in his individual capacity, retaliated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages as against Defendant Brillante, in his individual capacity, under the NYCHRL.

### DEMAND FOR JURY TRIAL

143.    Plaintiff demands a trial by jury on all claims in this action.

**WHEREFORE**, as a result of the unlawful conduct and actions of the Defendants herein alleged, Plaintiff demands judgment as follows:

a.     An order restraining Defendant from any retaliation against Plaintiff for filing or for participation in any form in this litigation;

b.     Declaring that Defendants' actions, conduct and practices violated the aforementioned statutes;

c.     Awarding Plaintiff back pay, front pay, and all benefits to which Plaintiff would have been entitled to receive but for Defendants' unlawful conduct;

d.     Awarding Plaintiff compensatory damages for emotional distress and/or mental anguish and for harm to her professional reputation;

e.     Granting Plaintiff equitable relief including reinstatement and/or transfer to another school;

f.     Awarding all attorneys' fees incurred in this action;

g.     Awarding all costs and disbursements in this action;

h.     Awarding Plaintiff pre- and post-judgment interest; and

i.     Such other and further relief as the Court deems just and proper.

Dated: Hauppauge, New York
May 15, 2019

LAW OFFICE OF PETER A. ROMERO PLLC
*Attorneys for Plaintiff*
825 Veterans Highway, Suite B
Hauppauge, New York 11788
Tel.: (631) 257-5588

By: _____
DAVID D. BARNHORN, ESQ.
PETER A. ROMERO, ESQ.